E. Jeffrey Walsh (009334)
WalshJ@gtlaw.com
GREENBERG TRAURIG LLP
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: (602) 445-8000
Facsimile: (602) 445-8100

Ian C. Ballon (*Pro Hac Vice*)
ballon@gtlaw.com
GREENBERG TRAURIG LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (310) 586-6575
Facsimile: (310) 586-0575

Sarah E. Barrows (*Pro Hac Vice*)
barrowss@gtlaw.com
Monica A. Hernandez (*Pro Hac Vice*)
hernandezmo@gtlaw.com
GREENBERG TRAURIG LLP
4 Embarcadero Center, Suite 3000
San Francisco, California 94111
Telephone: (415) 655-1300
Facsimile: (415) 707-2010

*Attorneys for Plaintiff Origami Owl, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

ORIGAMI OWL, LLC, a Delaware entity,

Plaintiff,

v.

JULIE E. MAYO, a single woman, ANN L. MAYO, a single woman, doing business as WEST COAST CHARMS and 5TH AVENUE PETS; WEST COAST CHARMS LLC, a Nevada entity,

Defendants.

No. 2:15-CV-00110-PHX-DGC

**PLAINTIFF ORIGAMI OWL, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT WEST COAST CHARMS LLC'S AMENDED COUNTERCLAIMS NINE AND TEN; MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. THE SHERMAN ACT COUNTERCLAIMS SHOULD BE DISMISSED ..... 2
A. Legal Standard ..... 2
B. WCC Fails To Plead A Relevant Antitrust Market ..... 3
C. WCC Does Not, And Cannot, Allege That O2 Possesses Market Power In The Claimed Relevant Market ..... 5
D. WCC Fails To Allege Injury To Competition ..... 9
E. WCC's Ninth Counterclaim For Attempted Monopolization Fails To Set Forth Sufficient Factual Allegations To State A Claim For Relief ..... 11
F. WCC's Tenth Counterclaim For Alleged Restraint Of Trade Fails To Set Forth Sufficient Allegations To State A Claim For Relief ..... 13
III. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*Affinity LLC v. GFK Mediamark Research & Intelligence, LLC*,
547 F. App'x 54 (2d Cir. 2013) .......... 7, 12

*Am. Ad. Mgmt., Inc. v. GTE Co.*,
190 F.3d 1051 (9th Cir. 1999) .......... 9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 11, 13

*Atl. Richfield Co. v. USA Petroleum*,
495 U.S. 328 (1990) .......... 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......... 2

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) .......... 10, 14

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) .......... 13

*Bus. Electronics Corp. v. Sharp Electronics Corp.*,
485 U.S. 717 (1988) .......... 16

*East Portland Imaging Center, P.C. v. Providence Health System-Oregon*,
280 F. App'x 584 (9th Cir. 2008) .......... 11

*Gough v. Rossmoor Corp.*,
585 F.2d 381 (9th Cir. 1978) .......... 3, 5

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .......... 14, 15, 16

*Knickerbocker Toy Co. v. Winterbrook Corp.*,
554 F. Supp. 1309 (D.N.H. 1982) .......... 13

*Korea Kumho Petrochem. v. Flexsys America LP*,
No. 07-cv-01057, 2008 WL 686834 (N.D. Cal. Mar. 11, 2008) .......... 12

*In re Late Fee & OverLimit Fee Litig.*,
528 F. Supp. 2d 953 (N.D. Cal. 2007) .......... 14, 15

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) .......... 2

*Little Rock Cardiology Clinic v. Baptist Health*,
591 F.3d 591 (8th Cir. 2009) .......... 5

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) .......... 10

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) .......... 15

*Newcal Indus. Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008) .......... 5

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
127 F.3d 1157 (9th Cir. 1997) .......... 7, 15

*PourFECT Prods. v. KitchenAid*,
No. 09-cv-2660, 2010 WL 1769413 (D. Ariz. May 3, 2010)............................ 5, 6, 8, 9

*Prime Healthcare Services, Inc. v. S.E.I.*,
No. 11-cv-2652, 2013 WL 3873074 (S.D. Cal. July 25, 2013).................................... 6

*Rebel Oil Co. v. Alt. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ........................................................................ *passim*

*Rick-Mik Enters. v. Equilon Enters.*,
532 F.3d 963 (9th Cir. 2008) ........................................................................ 6, 9

*Roland Machinery Co. v. Dresser Industries, Inc.*,
749 F.2d 380 (7th Cir. 1984) ........................................................................ 15

*Sidibe v. Sutter Health*,
4 F. Supp. 3d 1160, 1174-75 (N.D. Cal. 2013)................................................ 3, 5

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993)........................................................................................ 11

*Tampa Elec. Co. v. Nashville Coal Co.*,
365 U.S. 320 (1961)........................................................................................ 15

*Tanaka v. USC*,
252 F.3d 1059 (9th Cir. 2001) ........................................................................ 2, 3, 5

*Thurman Indus. v. Pay 'N Pak Store, Inc.*,
875 F.2d 1369 (9th Cir. 1989) ........................................................................ 3, 4

*U.S. Steel Corp. v. Fortner Enterprises, Inc.*,
429 U.S. 610 (1977)........................................................................................ 12

*Walker Process Equip., Inc., v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965).......................................................................................... 3

*William O. Gilley Enters. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) ........................................................................ 2, 14, 16

**Federal Statutes**

15 U.S.C. § 1........................................................................................ 1, 3, 10

15 U.S.C. § 2........................................................................................ 1, 10, 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)........................................................ 1, 2, 3

## **MOTION**[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and this Court's Minute Entry Order (Dkt. 44), Origami Owl, LLC ("O2") respectfully moves this Court to dismiss West Coast Charms LLC's ("WCC") ninth and tenth amended counterclaims brought under 15 U.S.C. §§ 1-2, the Sherman Antitrust Act. In support of this motion, O2 relies upon its Memorandum of Law, the attached declarations and exhibits, pleadings and documents on file, and such oral argument and other matters the Court may consider.

## **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

### **I. INTRODUCTION**

WCC has filed amended counterclaims for attempted monopolization under the Sherman Act section 2 (counterclaim nine) and for restraint of trade under the Sherman Act section 1 (counterclaim ten).

WCC's amended antitrust counterclaims should be dismissed for any one or all of the following, four independent reasons. First, WCC does not define a relevant market because its market definition impermissibly limits the relevant market to online sales activity. Second, WCC does not allege any facts showing O2 has market power in a relevant market. Third, WCC fails to allege injury to competition. Fourth, WCC's allegations of antitrust conduct are conclusory recitals of the antitrust causes of action it seeks to bring and do not state a plausible claim for relief.

O2 raised each of these points in its Motion to Dismiss served on counsel on May 20, 2015 (referred to herein as "MTD"),[2] yet WCC's amended counterclaims failed to adequately address these deficiencies. Accordingly, WCC's ninth and tenth amended

---

[1] Pursuant to the Court's Order (Dkt. 10), dated February 5, 2015, counsel for plaintiff Origami Owl, LLC ("O2") certifies that a good faith effort to confer with defendant West Coast Charms LLC's ("WCC's") counsel concerning the issues raised in this motion was made prior to filing this motion. However, O2 does not believe WCC's amendments to the counterclaims cured the pleading deficiencies O2 raised in the Motion to Dismiss served on WCC's counsel on May 20, 2015. *See* Declaration of Sarah E. Barrows ("Barrows Decl."), ¶¶ 2-7.

[2] Barrows Decl., Ex. C.

counterclaims should be dismissed with prejudice.

## II. THE SHERMAN ACT COUNTERCLAIMS SHOULD BE DISMISSED

### A. Legal Standard

The counterclaimant bears the burden of pleading sufficient factual content in its counterclaims to suggest its claims for relief are plausible and it is entitled to the relief sought. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (noting that allegations in a complaint and counterclaim are held to the same pleading standards). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (citing *Twombly*, 550 U.S. at 555). In considering a motion to dismiss, a court may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664.

"On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles" and common sense. *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009). Courts should be particularly wary of conclusory or insufficient allegations in antitrust cases because of the potential for needless and extremely burdensome and expensive discovery. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," particularly in light of the fact that "antitrust discovery can be expensive." *Twombly*, 550 U.S. at 558 (citation omitted).

In short, an antitrust cause of action will not survive a Rule 12(b)(6) motion to dismiss (1) on the basis of conclusory statements or (2) where the claim lacks facial plausibility. *Iqbal*, 556 U.S. at 678-79; *Tanaka v. USC*, 252 F.3d 1059, 1063 (9th Cir. 2001) (affirming the district court's dismissal with prejudice where plaintiff's allegations

of a "relevant market" were conclusory and unsupported by factual allegations).

**B. WCC Fails To Plead A Relevant Antitrust Market**

Defining the proper relevant market is a threshold requirement to stating an antitrust claim under either section 1 or 2 of the Sherman Act. *Tanaka*, 252 F.3d at 1063 ("The [counterclaimant] bears the initial burden of showing that the restraint produces 'significant anticompetitive effects' within a 'relevant market.'") (citation omitted); *see also Walker Process Equip., Inc., v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177-78 (1965) (defining the relevant market is critical to the antitrust analysis measuring defendant's ability to lessen or destroy competition). "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka*, 252 F.3d at 1063. The relevant market definition must include both a relevant product market and a relevant geographic market. *Id.* Courts routinely dismiss antitrust claims under Rule 12(b)(6) when the alleged relevant market definition is facially unsustainable. *Tanaka*, 252 F.3d at 1063; *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1174-75 (N.D. Cal. 2013). Because WCC alleges the same implausible relevant market in support of both Sherman counterclaims, both amended antitrust claims should be dismissed for failure to define a relevant market. *Tanaka*, 252 F.3d at 1063.

WCC's alleged relevant market is unduly narrow and improper as a matter of law because it unreasonably seeks to limit the market to online sales. In antitrust law, the relevant market definition must extend to the "'area of effective competition' . . . where buyers can turn for alternative sources of supply.'" *Tanaka*, 252 F.3d at 1063. "The geographic market selected must, therefore, both 'correspond to the commercial realities' of the industry and be economically significant." *Gough v. Rossmoor Corp.*, 585 F.2d 381, 389 (9th Cir. 1978) (citing *Case-Swayne Co. v. Sunkist Growers, Inc.*, 369 F.2d 449, 455-58 (9th Cir. 1966), *rev'd on other grounds*, 389 U.S. 384 (1967). The relevant market must include "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Thurman Indus. v. Pay 'N Pak Store, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989). Further, in general, the

relevant product market must include all products that compete with each other. *E.g., Rebel Oil Co. v. Alt. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). O2 raised these points in the MTD it served on counsel. *See* MTD at 3:23-6:07. As detailed below, WCC did not address its deficient relevant market definition by amending the relevant market from "O2's online sales" to "the online market in the United States" because the amended relevant market definition still impermissibly narrows the market to online sales.

Specifically, WCC's amended counterclaims now define the relevant market as the "online market in the United States" and claims "[t]here is a particular market in the United States with respect to purchasers purchasing on an online basis . . . ." Amended Counterclaims ¶ 23. The only allegation in support of restricting the relevant market to online activity is WCC's self-serving and factually unsupported assertion regarding alleged consumer inconvenience. Namely, WCC alleges that, "[c]ustomers seeking the Relevant Products, particularly the specific design and/or customization aspect of the Relevant Products, do not have the same ability to acquire such products other than through online means as going to a physical retail outlet does not entail the same type of electronic ordering efficiency and capability as an online market." *Id.* at ¶ 24. There are no factual allegations that support this assertion, nor could there be. There is no stated reason that "efficiency" is an economically significant factor in the jewelry market, and no plausible reason to exclude other retail channels such as any jewelry store, boutique, trade show, or even direct sales. The relevant market must include sellers or producers who have the actual or potential ability to deprive one another of significant levels of business. *Thurman*, 875 F.2d at 1374. The amended counterclaims do not proffer any plausible reason that non-internet jewelry sales channels do not compete with internet jewelry sales channels.

Indeed, WCC does not and cannot allege that sellers of the purported relevant products only sell their products online. There is no plausible reason, for example, that direct sales of a particular product would not compete with online sales of the same product. Further, WCC does not proffer any reason a consumer would *not* find any non-

internet sales channel equally capable or efficient (assuming for the sake of argument that efficiency is a commercially significant factor).[3] In short, there is no plausible reason alleged that non-internet sales are not alternative sources of supply for a consumer seeking to purchase jewelry, and no reason to accept WCC's limitation of the market to online sales activity. *Gough*, 585 F.2d at 389 ("[I]n determining the relevant market the courts are not free to accept whatever market is suggested by the [counterclaimant] as fitting most persuasively with his contention [of an alleged antitrust violation].").

Because WCC has premised its relevant market on a fundamental mistake of law, the problem is not with its "factual allegations, but rather its legal theory." *Little Rock Cardiology Clinic v. Baptist Health*, 591 F.3d 591, 597-98 (8th Cir. 2009). Thus, WCC's antitrust counterclaims cannot be saved by further amendment. *Tanaka*, 252 F.3d at 1065 (citation omitted). Accordingly, WCC's market definition fails as a matter of law and its Sherman counterclaims should be dismissed with prejudice.

### C. WCC Does Not, And Cannot, Allege That O2 Possesses Market Power In The Claimed Relevant Market

To state a Sherman Act claim, a plaintiff must allege that the defendant has market power within a "relevant market." *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008), *cert. denied*, 557 U.S. 903 (2009). "The 'relevant market' and 'market power' requirements apply identically under the two different sections of the [Sherman] Act." *Id.* at 1044 n.3. Therefore, WCC's failure to allege a relevant market or allege market power within that market is fatal to both of its Sherman Act counterclaims. *Id*. at 1046; *Sidibe*, 4 F. Supp. 3d at 1174, 1180-81.

"Direct proof of market power may be shown by evidence of restricted output and supracompetitive prices." *PourFECT Prods. v. KitchenAid*, No. 09-cv-2660, 2010 WL 1769413, *2 (D. Ariz. May 3, 2010) (citing *Forsyth v. Humana, Inc.*, 114 F.3d 1467,

---

[3] Indeed, non-internet sales may have other benefits to consumers such as displaying products a consumer might not otherwise consider looking for online.

1475 (9th Cir. 1997)). WCC does not and cannot allege supracompetitive pricing *or* restricted output, and therefore fails to allege any fact showing direct proof of market power. *Id.*; *Rebel*, 51 F.3d at 1434.

Circumstantial evidence of market power "requires the plaintiff to: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *PourFECT Prods.*, 2010 WL 1769413, *2 (citing *Forsyth,* 114 F.3d at 1476). Here, WCC fails to define the relevant market and does not (and cannot) allege facts establishing O2's alleged dominant market share, a "critical element to demonstrate circumstantial evidence of market power." *Prime Healthcare Services, Inc. v. S.E.I.*, No. 11-cv-2652, 2013 WL 3873074, *15 (S.D. Cal. July 25, 2013). WCC alleges that O2 has 50,000 designers that allegedly "constitute a massive salesforce" and that O2's annual sales equal or exceed $250 million. Amended Counterclaims ¶¶ 22, 27. These allegations do not provide circumstantial evidence of market share or market power (even assuming a proper definition of the relevant market, which has not been alleged). *Rick-Mik Enters. v. Equilon Enters*., 532 F.3d 963, 972 (9th Cir. 2008); *PourFECT Prods.*, 2010 WL 1769413, *2. This exact point was raised in O2's MTD, but WCC's amended counterclaims do not address this fatal flaw. *See* MTD at 8:13-22.

WCC also fails to allege facts showing there are *significant* barriers to entry into the market. *Rebel Oil*, 51 F.3d at 1439. Instead, the amended counterclaims assert a new allegation that, "O2 has stifled new entrants into the Market by way of new entrants' diminished capability to compete with O2's pricing, O2's army of so-called designers and in fear of O2's bullying tactics involving claims of intellectual property ownership." Amended Counterclaims ¶ 34. There are no details concerning the alleged "bullying tactics" or how such tactics allegedly prevent new entrants from entering the market—let alone create a "significant" barrier to entry. Nor are there any facts alleged that make it plausible that O2's alleged "army" of designers "stifle" a new entrant from competing

against O2 with its own jewelry designs. WCC does not and cannot allege any nexus between O2's alleged salesforce number and any alleged barrier to entry into the market. *See Omega Envtl.*, 127 F.3d at 1164 (finding no credible connection between defendant's alleged exclusive dealings with hundreds of distributors and any barrier to entry).

Similarly unavailing is the amended counterclaims' brief reference to new market entrants' alleged "diminished capability to compete with O2's pricing." Amended Counterclaims ¶ 34. Even setting aside the other problems with this allegation, it fails on its face to allege the requisite "significant barrier" to entering the market by stating new market entrants have only a "diminished capability to compete[.]" *Id.* A diminished capacity is plainly not a significant barrier. Further, while the amended counterclaims assert that O2 is able to sell its products "using predatory pricing by discounting its prices for the Relevant Products to retail customers at eighty percent reductions from wholesale pricing" and that O2 is able to sell its products "at a significantly reduced price as compared to competitors" (Amended Counterclaims ¶¶ 29-30), these allegation do not and cannot allege predatory pricing. Predatory pricing occurs in two-steps. First, "the defendant sets prices below its marginal cost hoping to eliminate rivals and increase its share of the market." *Rebel Oil Co.*, 51 F.3d at 1433. Second, defendant "collect[s] the fruits of the predatory scheme by charging supracompetitive prices—prices above competitive levels. The predator's hope is that the excess profits will allow it to recoup the losses suffered during the price war." *Id.* at 1434 (citing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993)); *see also* MTD at 7:28-8:11 (making the same point regarding predatory pricing). Consequently, "[i]n order to plead a predatory pricing claim under §2 of the Sherman Act, a plaintiff must first allege 'that the prices complained of are below an appropriate measure of its rival's costs' and second that there is a 'dangerous probability [] of recouping its investment in below-cost prices.'"). *Affinity LLC v. GFK Mediamark Research & Intelligence, LLC*, 547 F. App'x 54, 55 (2d Cir. 2013) (citing *Brooke*, 509 U.S. at 222).

While WCC amended its counterclaims to allege O2 uses predatory pricing by

discounting its prices to customers, it failed to allege the costs of competitors or allege that O2's pricing is below the costs of its competitors. The amended counterclaims also fail to allege any facts at all regarding recoupment. Instead, the amended counterclaims merely allege that O2 "uses predatory pricing" by offering its products at a significantly reduced price. Amended Counterclaims ¶ 29. In sum, WCC does not and cannot allege any facts that, if true, show O2's pricing presents a significant barrier to entering the market. In addition, WCC's amended counterclaims did not address the conclusory and unintelligible allegation that O2 allegedly "illegitimately attained market share" through unspecified alleged "misuse and illegitimate leveraging of third parties' intellectual property . . . falsely leveraging such intellectual property through its 50,000 so-called 'independent' contractors . . . to illegitimately attain market share by way of lower investment costs, intellectual property-based restrictive covenants, and control of pricing and distribution channels." Amended Counterclaims ¶ 109; *see* MTD 9:06-16 (addressing the pleading failures of the identical allegation in the counterclaim). As O2 already explained to WCC in its MTD, WCC did not allege dominant market share in the first place, and the unsupported and vague reference to "lower investment costs" and unspecified alleged "control of pricing and distribution channels" fail to sufficiently set forth allegations of significant barriers to entry by competitors necessary to allege market power for an antitrust claim. *PourFECT Prods.*, 2010 WL 1769413, *2..

Last, the amended counterclaims do not and cannot allege any barriers to expansion for existing competitors. *Rebel Oil*, 51 F.3d at 1439 ("A mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme . . . . a plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price."). WCC amended its counterclaims to add a single, conclusory allegation that, "O2 has negated the ability of certain competitors to increase output . . . ." Amended Counterclaims ¶ 35. First, output is based on the ability of all competitors in the market to increase output, not just "certain competitors" as WCC

alleges. *Rebel Oil*, 51 F.3d at 1441 ("The ability to control output and prices — the essence of market power — depends largely on the ability of existing firms to quickly increase their own output in response to a contraction by the defendant.") (internal citations omitted). Second, the ability of the market to increase output is only relevant in cases alleging supracompetitive prices—prices *above* competition levels, not below it. *Id.* ("If existing competitors are producing at full capacity, they may lack the ability to quickly expand supply and counteract a predator's supracompetitive pricing . . . .[o]n the other hand, if rivals have idle plants and can quickly respond to any predator's attempt to raise prices above competitive levels, the predator will suffer an immediate loss of market share to competitors. In that instance, the predator does not have market power."). The amended counterclaims do not allege supracompetitive pricing, therefore, the capacity of a competitor to expand output is not relevant, and the inability of "certain competitors" to expand output does not allege any barriers to expansion for existing competitors because, on its face, this conclusory allegation implies that some competitors could expand output (even assuming output were relevant here, which it is not).

O2's MTD explained that WCC's counterclaims failed to allege the ability of competitors to increase output in response to WCC's previous allegation of supracompetitive prices, make any allegation concerning barriers to entry into the market, or allege the two-step process of predatory pricing. *See* MTD at 7:28-8:11, 9:3-16. WCC did not amend its counterclaims to cure any of these deficiencies. Because WCC cannot allege O2 has market power and has failed to allege a relevant market, its antitrust claims should be dismissed with prejudice. *Rick-Mik*, 532 F.3d at 972-73; *PourFECT Prods.*, 2010 WL 1769413, *2.

**D. WCC Fails To Allege Injury To Competition**

In addition to failing to plead a relevant market or market power, both of WCC's antitrust counterclaims should be dismissed for the additional, independent reason that WCC fails to allege injury to competition or "antitrust injury." *Am. Ad. Mgmt., Inc. v. GTE Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999). "[A] firm complaining about the harm it

suffers from nonpredatory price competition is really claiming that it is unable to raise prices. This is not antitrust injury; indeed, cutting prices in order to increase business often is the very essence of competition." *Atl. Richfield Co. v. USA Petroleum*, 495 U.S. 328, 338-39 (1990) (internal citations omitted). Indeed, even conduct that eliminates rivals does not invoke the Sherman Act unless it harms consumers—a fact WCC plainly fails to allege. *Rebel Oil Co.*, 51 F.3d at 1433-34; *Am. Ad. Mgmt.*, 190 F.3d at 1055.

O2's MTD explained that WCC failed to plead injury to competition and instead only pled injury to itself. *See* MTD at 9:20-10:15, 11:17-12:05, 13:5-22. WCC did not amend its counterclaims to address this fatal defect. *See* Amended Counterclaims ¶¶ 110 ("West Coast has been injured by O2's conduct in violation of Section Two of the Sherman Act by virtue of losing revenues due to lost sales . . . ."), 122 ("West Coast is directly harmed by the restraint due to the direct loss of customers and business relationships that would purchase products from West Coast.").

WCC's alleged harm to itself does not set forth the requisite antitrust injury. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) ("[P]laintiffs must plead an injury to competition beyond the impact on the plaintiffs themselves.") (citation omitted). "The Sherman Act itself speaks of 'restraint[s] of trade or commerce,' 15 U.S.C. § 1, and attempted monopolization of 'trade or commerce,' 15 U.S.C. § 2, not individual competitors in a market." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988). "Plaintiffs may not substitute allegations of injury to the claimants for allegations of injury to competition." *Brantley*, 675 F.3d at 1200 (citing *USA Petroleum*, 495 U.S at 334-35); *see also USA Petroleum*, 495 U.S at 334 ("a plaintiff must prove the existence of 'antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'") (internal citations omitted). WCC's amended antitrust claims should be dismissed with prejudice for the additional, independent, ground that the counterclaims fail to plead injury to competition. *Id.*

### E. WCC's Ninth Counterclaim For Attempted Monopolization Fails To Set Forth Sufficient Factual Allegations To State A Claim For Relief

In addition to failing to define a proper relevant market, allege market power or allege injury to competition, WCC's amended counterclaim nine also fails for the additional reason that it fails set forth sufficient factual allegations to state a claim for relief. *Iqbal*, 556 U.S. at 678-79.

To state a Sherman Act 2 claim for attempted monopolization, a claimant must allege facts sufficient to show (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize, and (3) a dangerous probability of achieving monopoly power. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). O2 made this exact point to WCC in its MTD, but WCC did not amend its counterclaims to cure its threadbare recitals of the elements of a Sherman Act 2 claim. *See* MTD at 10:19-11:16, 12:06-12.[4]

As O2 already explained in its MTD, because WCC has failed to define a relevant market or set forth sufficient allegations of alleged market power, including allegations of significant barriers to entry, there are no factual allegations concerning O2's alleged "dangerous probability" of achieving monopoly power. *E.g., East Portland Imaging Center, P.C. v. Providence Health System-Oregon*, 280 F. App'x 584, 586 (9th Cir. 2008) ("to demonstrate that there is a dangerous probability that the defendant will achieve monopoly power, . . . 'a plaintiff must: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run.'") (citation omitted). As O2 has already pointed out to WCC, the

---

[4] Amended Counterclaims ¶¶ 105-108 are identical to the conclusory allegations of the initial counterclaim that allege, in rote, conclusory, fashion, "O2 engages in predatory conduct within the Market . . . . O2 engages in anticompetitive conduct within the Market . . . . O2 has a specific intent to monopolize . . . . O2 has a dangerous probability of achieving monopoly power." *Id.*

conclusory allegation that a defendant has a dangerous probability of achieving monopoly power is insufficient to state a Sherman Act 2 claim for relief. *Korea Kumho Petrochem. v. Flexsys America LP*, No. 07-cv-01057, 2008 WL 686834, *9 (N.D. Cal. Mar. 11, 2008) (dismissing plaintiff's attempted monopolization claim because the complaint made only a blanket allegation that the defendants had a dangerous probability of achieving monopoly power); *see* MTD at 11:12-16.

In addition, as O2 has also raised with WCC, the amended counterclaims are entirely devoid of any facts evidencing a specific intent to monopolize. *See* MTD at 12:06-12. There are simply no allegations suggesting that O2 wants to do any more than increase its sales and market share, which is not a violation of the Sherman Act. *U.S. Steel Corp. v. Fortner Enterprises, Inc.*, 429 U.S. 610, 612 n.1 (1977) ("'increasing sales' and 'increasing market share' are normal business goals, not forbidden by § 2 without other evidence of an intent to monopolize."). Consequently, WCC has not pled the requisite specific intent necessary to bring a Sherman Act 2 claim.

While the amended counterclaims add a handful of conclusory allegations regarding allegedly predatory or anticompetitive behavior, these allegations are not sufficient to state a Sherman Act 2 claim for relief. Namely, the allegedly anticompetitive behavior identified in the amended counterclaims is "predatory pricing" (Amended Counterclaims ¶ 29) and "false claims of proprietary intangible asset ownership" (*id.* at ¶ 32) that O2 allegedly "leverages" and uses to "bully" competitors (*id.* at ¶ 109). As discussed *supra* in section II. C., WCC does not and cannot allege predatory pricing. *Affinity*, 547 F. App'x at 55 ("In order to plead a predatory pricing claim under §2 of the Sherman Act, a plaintiff must first allege 'that the prices complained of are below an appropriate measure of its rival's costs' and second that there is a 'dangerous probability [] of recouping its investment in below-cost prices.'") (citing *Brooke*, 509 U.S. at 222). WCC's allegation that O2 "engages in predatory competitive activities by way of bullying competitors with false claims of proprietary intangible asset ownership" is also addressed *supra* in section II. C. The alleged "false claims of proprietary

intangible asset ownership" is both conclusory and unintelligible. WCC does not explain what this means or allege any nexus between these alleged "false claims of intangible asset ownership" and purported anticompetitive or predatory behavior. *E.g.*, *Knickerbocker Toy Co. v. Winterbrook Corp.*, 554 F. Supp. 1309, 1321 (D.N.H. 1982) (dismissing counterclaim for violation of a Sherman Act 2 claim because allegations failed to allege a nexus between plaintiff's alleged illegal enforcement of a copyright and the dangerous probability of successful monopolization in a relevant market). Moreover, the amended counterclaims do not allege any facts describing O2's alleged bullying, so it is unclear what conduct WCC refers to or how the undescribed alleged bullying is anticompetitive behavior that invokes the protection of the antitrust laws. *Id.* Further, even if the court were to accept as true that O2 bullies its competitors, this allegation would not be sufficient to state a claim for attempted monopolization. *Brooke*, 509 U.S. at 225-26 ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'") (citing *Hunt v. Crumboch*, 325 U.S. 821, 826 (1945)).

Because WCC fails to sufficiently allege anticompetitive or predatory conduct, a specific intent to monopolize or a dangerous probability of achieving monopoly power, its factually unsupported and conclusory allegations fail to state a Sherman Act 2 claim for relief. *Iqbal*, 556 U.S. at 663-64 (citing *Twombly*, 550 U.S. at 555).

### F. WCC's Tenth Counterclaim For Alleged Restraint Of Trade Fails To Set Forth Sufficient Allegations To State A Claim For Relief

WCC did not amend its Sherman Act 1 counterclaims at all, and thus failed to address the numerous pleading deficiencies of this claim that O2 identified in its Motion to Dismiss and restates below. *See* MTD at 12:18-15:10.

To state a Sherman Act 1 claim for alleged restraint of trade, WCC "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove:

(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce . . . (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (finding plaintiff-appellant failed to allege facts to support a theory of conspiracy or agreement to restrain trade and dismissing antitrust claim without leave to amend); *William O. Gilley Enters.*, 588 F.3d at 669 (affirming the district court's dismissal of plaintiff's Sherman Act 1 claim without leave to amend where complaint failed to clearly assert a particular agreement that allegedly constituted a contract intending to harm or restrain trade) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, a claimant is required to allege some "further circumstance pointing toward a meeting of the minds" to make the claim of conspiracy not merely "conceivable" but in fact "plausible." *In re Late Fee & OverLimit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014) (citing *Twombly*, 550 U.S. at 550). In addition, to plead actual injury to competition, "'a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably. Rather, a claimant must, at a minimum, sketch the outline of [the injury to competition] with allegations of supporting factual detail.'" *Brantley*, 675 F.3d at 1198 (quoting *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989)).

Here, WCC does not allege any facts that, if true, would show a plausible agreement by which O2 and its sales representatives (whom WCC refers to as "Contractors")[5] intended to harm or restrain trade, and which actually injured competition. Instead, WCC merely alleges, without any explanation or factual support, that "O2 conspires" with its sales

---

[5] WCC alleges, without any factual support, that O2's "designers . . . actually constitute a massive salesforce across the United States and do little in the way of designing anything." Amended Counterclaims ¶ 22. WCC refers to O2's salesforce members as "Contractors" but does not allege any facts to support describing O2's salesforce as contractors. *Id.* at ¶ 109.

representatives to sell only O2's products, conspires to make these sales "based upon the Deceptive Copyright Acts" and conspires to "restrain the trade of other producers or sellers . . . by way of the exclusive relationships." Amended Counterclaims ¶¶ 114-116. These allegations are conclusory, and unintelligible. As in *Kendall,* WCC's counterclaim does not "answer the basic questions: who, did what, to whom (or with whom), where and when" with the intention of restraining trade and actually causing injury to competition. *Kendall*, 518 F.3d at 1048; *see also In re Late Fee*, 528 F. Supp. 2d at 962 (section one antitrust claimant must set forth "concrete allegations about the content and circumstances of any actual agreement.").

Further, even if the Court were to accept as true that O2 has an exclusive dealing contract with its own sales representatives, exclusive dealing arrangements are not an illegal restraint on competition unless they "foreclose competition in a substantial share of the line of commerce affected." *Tampa Elec. Co. v. Nashville Coal Co.* 365 U.S. 320, 327 (1961). Even setting aside the fact that WCC has not alleged a relevant market or market power, it is well settled that a manufacturer may sell (or not sell) its product to whomever it chooses. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 760 (1984) (citing *U.S. v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). In fact, exclusive dealing may even increase welfare by "lead[ing] dealers to promote each manufacturer's brand more vigorously than would be the case under nonexclusive dealing" and "prevent[ing] dealers from taking a free ride" on one manufacturer's promotional efforts. *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 395 (7th Cir. 1984); *see also Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) (discussing numerous well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand competition).

In sum, WCC's allegations do not set forth any facts concerning the alleged agreement, the capability of O2's sales representatives to terminate that agreement, the availability of other "contractors" to competitors, or even the alleged duration of the agreement—in other words, any facts that might suggest a plausible claim for a conspiracy made with the intent to restrain trade. Instead, WCC's allegations are mere

legal conclusions that O2's engagement with its sales representatives constitute:

- "thousands of illegal contracts in restraint of trade[;]"
- "vertical restraint of trade within the lines of distribution[;]"
- "horizontal restraint of trade restricting competitors from making sales within the network of contractors[;]"
- "vertical restraint of trade includes price constraints imposed upon the Contractors."

Amended Counterclaims ¶¶ 118-121. These conclusory allegations use antitrust terms such as "conspiracy" or "vertical" and "horizontal" restraints, but lack any factual support that, if true, evidences a plausible agreement to restrain trade or any alleged injury to competition.

For example, vertical restraints result when firms at different market levels in the chain of distribution conspire to restrain trade. *Bus. Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 730 (1988). These types of agreements are governed by the rule of reason. *Id.* at 723. However, WCC does not and cannot allege any facts that, if true, would show an alleged vertical restraint or suggest any alleged vertical agreement is unreasonable. In addition, as alleged, O2's sales representatives appear to have a vertical relationship with O2, and thus, a horizontal effect of that relationship is not a horizontal restraint of trade. *See Bus. Electronics*, 485 U.S. at 730 ("Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints."). Finally, to the extent WCC is attempting to allege that the vertical agreements are "maximum price fixing" agreements, this allegation does not constitute antitrust injury. *See Rebel Oil*, 51 F.3d at 1444 ("maximum price fixing cannot cause antitrust injury because low prices are the 'very essence of competition.'") (citations omitted). The amended counterclaim concerning O2's alleged restraint of trade remains unintelligible and continues to fail to state a plausible claim for relief. WCC's counterclaim ten should be dismissed with prejudice. *Kendall*, 518 F.3d at 1047; *William*

*O. Gilley Enters.*, 588 F.3d at 669 (affirming the district court's dismissal of plaintiff's section one claim brought under the Sherman Act, without leave to amend) (citing *Twombly*, 550 U.S. at 555).

## III. **CONCLUSION**

WCC's Sherman Act counterclaims expressly rely on an artificially narrow and legally insufficient defined relevant market, fail to allege O2's market power, fail to allege injury to competition, and fail to state a plausible claim for antitrust relief with factual allegations in support of the requisite elements of the alleged Sherman 1 and Sherman 2 claims. WCC's legal errors are incurable. For any one and all of these independent reasons, WCC's Sherman Act counterclaims should be dismissed with prejudice.

Dated: June 12, 2015

GREENBERG TRAURIG, LLP

By: *__/s/ Ian C. Ballon__*
Ian C. Ballon
Attorneys for Plaintiff Origami Owl, LLC
Email: Ballon@gtlaw