1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9  Origami Owl LLC,                          No. CV-15-00110-PHX-DGC

10                 Plaintiff,                 **ORDER**

11  v.

12  Julie E Mayo,

13                 Defendant.

14

15          Plaintiff Origami Owl LLC and Defendant Julie E. Mayo have filed cross-motions

16  for summary judgment.  Docs. 108, 110.  The motions are fully briefed.  Docs. 111, 112,

17  115, 120, 121.  No party requests oral argument.  The Court will grant Plaintiff's motion

18  and deny Defendant's motion.

19  **I.      Background.**

20          Plaintiff sells low-priced jewelry.  Doc. 20, ¶ 13.  The jewelry includes lockets,

21  chains, dangles, tags, bracelets, and earrings.  *Id.*  Defendants West Coast Charms LLC

22  ("WCC"), Julie Mayo, and Ann Mayo are also in the ornamental jewelry business.  *Id.*,

23  ¶ 20.  On December 10, 2011, Julie Mayo sent an email to Christian Weems, Plaintiff's

24  Co-Founder and President, stating: "I like your charms.  I will be making some of your

25  designs also."  Doc. 111, ¶ 6.  Ms. Weems sent an email response the same day asking

26  Julie Mayo not to copy Plaintiff's designs, noting that Plaintiff "spent thousands of

27  dollars creating" them.  *Id.*, ¶ 7.  On December 24, 2011, Julie Mayo sent a second email

28  to Ms. Weems stating: "Customers are very interested in your designs for me to carry.  I

1   will not make them if can we [sic] work together." *Id.*, ¶ 8.

2   Between April and November of 2012, Plaintiff's counsel sent three letters to Julie

3   Mayo "asking her to cease and desist from making and selling jewelry that infringes on

4   [Plaintiff's] copyrights." *Id.*, ¶¶ 9-11.   On September 23, 2014, Plaintiff's compliance

5   department sent Julie Mayo another letter advising her that Plaintiff's audit of the internet

6   had revealed that her business sold unauthorized copies of Plaintiff's copyrighted works,

7   and again asked that she cease and desist from making and selling the jewelry. *Id.*, ¶ 12.

8   On January 21, 2015, Plaintiff filed this lawsuit, claiming design patent

9   infringement under 35 U.S.C. § 271, trademark infringement under 15 U.S.C. § 1114,

10   copyright infringement under 17 U.S.C. § 501, and unfair competition under 15 U.S.C.

11   § 1125.   Doc. 20.   WCC filed counterclaims against Plaintiff, including allegations of

12   direct copyright infringement, trademark infringement, common law unfair competition,

13   and attempted monopolization in violation of the Sherman Act, 15 U.S.C. §§ 1-2.

14   Doc. 48, ¶¶ 38-124, 135-141.   On February 11, 2016, the Court entered a default

15   judgement against WCC and dismissed its counterclaims.   Docs. 80, 81, 86.   On

16   January 17, 2017, the Court entered judgment against Ann Mayo pursuant to a stipulation

17   for entry of judgment.   Doc. 118.   Julie Mayo is the last remaining defendant.

18   On March 14, 2016, Julie Mayo filed for bankruptcy.   The Court stayed this matter

19   until September 14, 2016, or until the bankruptcy stay was lifted.   Doc. 85.   Following a

20   final decree from the bankruptcy court, the Court lifted the stay on September 23, 2016.

21   Doc. 100.   Plaintiff alleges that Julie Mayo has continued to offer and sell the infringing

22   charms, dangles, and heart-shaped glass lockets.   Doc. 110 at 17-19; Doc. 111, ¶ 20.

23   Julie Mayo does not contest this assertion in her response.   *See generally* Doc. 115.

24   Plaintiff moves for partial summary judgment on its copyright and patent

25   infringement claims.   Doc. 110 at 10-19.   Plaintiff also seeks a permanent injunction to

26   prevent Julie Mayo "from engaging in future copyright and patent infringement

27   activities."   *Id.* at 19-22.   Julie Mayo seeks summary judgment in her favor.   Doc. 108.

28

1    **II.     Legal Standard.**

2          A party seeking summary judgment "bears the initial responsibility of informing

3    the district court of the basis for its motion, and identifying those portions of [the record]

4    which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

5    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Summary judgment is appropriate if the

6    evidence, viewed in the light most favorable to the nonmoving party, shows "that there is

7    no genuine dispute as to any material fact and the movant is entitled to judgment as a

8    matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a

9    party who "fails to make a showing sufficient to establish the existence of an element

10   essential to that party's case, and on which that party will bear the burden of proof at

11   trial."  *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome

12   of the suit will preclude the entry of summary judgment, and the disputed evidence must

13   be "such that a reasonable jury could return a verdict for the nonmoving party."

14   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

15   **III.    Defendant Julie Mayo's Motion for Summary Judgment.**

16         Defendant's motion fails to identify the claims, or parts of claims, on which she

17   seeks summary judgment.  *See* Doc. 108.  Her motion is a steady stream of denials (*id.*,

18   ¶¶ 1, 6), unsupported accusations (*id.*, ¶¶ 2-5, 8, 11), demands for a federal investigation

19   (*id.*, ¶¶ 5, 10), threats of bar complaints and criminal charges against Plaintiff's counsel

20   (*id.*, ¶¶ 5, 9, 11, 17), and much tangential and irrelevant information (*id.*, ¶¶ 12-15, 18).

21   Defendant's assertions do not show that Plaintiff's claims fail as a matter of law.

22   Additionally, Defendant fails to submit any supporting documentation or to cite any

23   portion of the record that would support her arguments or establish the absence of a

24   genuine dispute.  *See* Docs. 108, 120, 121.  Accordingly, the Court will deny Defendant's

25   motion for summary judgment.[1]

26   / / /

27

28         [1] To the extent Defendant's assertions pertain to WCC's dismissed counterclaims, they are not material and will not be considered.  *See Anderson*, 477 U.S. at 248.

1

IV.     **Plaintiff's Motion for Summary Judgment.**

2

Plaintiff seeks summary judgment on its copyright and patent infringement claims,

3

and a permanent injunction to prevent Defendant from engaging in infringing conduct in

4

the future.  Doc. 110 at 10-22.

5

A.     **Copyright Infringement.**

6

"To establish copyright infringement, a plaintiff must prove two elements: '(1)

7

ownership of a valid copyright, and (2) copying of constituent elements of the work that

8

are original.'"  *Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir. 2016) (quoting *Feist*

9

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

10

1.     **Ownership.**

11

Plaintiff asserts that it owns valid copyrights in the works at issue, and cites

12

copyright certificates for each of the works.  Doc. 110 at 10.  Defendant responds by

13

arguing that the copyright certificates were procured by fraud, but provides no evidence

14

in support of fraud.  Doc. 115, ¶ 3.[2]

15

If a party presents a certificate of registration created less than five years after the

16

first publication of the copyrighted work, the law recognizes a rebuttable presumption

17

that the party's ownership of the copyright is valid.  17 U.S.C. § 410(c); *United Fabrics*

18

*Intern., Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).  In this instance,

19

Plaintiff provides copyright certificates covering all 42 items Plaintiff alleges to be

20

infringed.  *See* Doc. 110-1 at 103-72 (Christian Weems Declaration, Exhibit 13).  Each

21

certificate was issued within five years of what the certificate reports to be the product's

22

first publication.  *Id.*  Thus, Plaintiff has established a presumption that its ownership of

23

the copyrights is valid, and the burden shifts to Defendant to rebut that presumption.  *See*

24

*United Fabrics*, 630 F.3d at 1257.

25

26

27

28

[2] The Court notes that Defendant's response to Plaintiff's motion for summary judgment (Doc. 115) is in large part identical to Defendant's motion for summary judgment (Doc. 108).  In fact, the only substantial difference between the two filings is a short section that was added to the first paragraph of the response restating accusations and threats contained elsewhere in the document.  *See* Doc. 117-1 at 4-12 (redline copy comparing Doc. 108 and Doc. 115).

1    Defendant has failed to meet her burden.  In this Court's January 5, 2017 order

2    instructing Defendant to respond to Plaintiff's motion, the Court advised Defendant that

3    she "must show there is a genuine issue of material fact by setting out specific facts in

4    declarations, depositions, answers to interrogatories, or authenticated documents as

5    provided in Rule 56(e), that contradict the facts shown in Plaintiff's declarations or

6    documents."  Doc. 113 at 1-2; *see also Celotex*, 477 U.S. at 324.  Defendant chose to do

7    none of these things, and fails to provide any evidence to support the accusations made in

8    her response.  *See* Doc. 115.  Accordingly, the Court finds that Plaintiff has established

9    ownership of the copyrights Plaintiff alleges are infringed by Defendant.  *See* Doc. 20-1

10   at 1-3 (Exhibit A of Amended Complaint showing all works alleged to be infringed);

11   Doc. 110-1 at 103-72 (Certificates of Copyright for those works).

12                **2.    Copying of Plaintiff's Protected Works.**

13        "Proof of copyright infringement is often highly circumstantial[.]"  *Three Boys*

14   *Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). "Absent direct evidence of

15   copying, proof of infringement involves fact-based showings that the defendant had

16   'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Id.*

17   (quoting *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)); *see also Funky Films,*

18   *Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006).  Plaintiff asserts

19   that "there is no dispute that defendant copied [Plaintiff's] Copyrighted Works because it

20   is undisputed that defendant had access to [Plaintiff's] Copyrighted Works and the

21   striking similarities between defendant's jewelry and [Plaintiff's] Copyrighted Works is

22   readily apparent."  Doc. 110 at 11.

23                     **a.    Access.**

24        Proof of access requires "an opportunity to view or to copy plaintiff's work."  *Sid*

25   *and Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th

26   Cir. 1977), *superseded on other grounds by* 17 U.S.C. § 504(b).  "To prove access, a

27   plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged

28   infringer had the chance to view the protected work."  *Art Attacks Ink, LLC v. MGA*

- 5 -

1   *Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).  "Where there is no direct evidence of

2   access, circumstantial evidence can be used to prove access either by (1) establishing a

3   chain of events linking the plaintiff's work and the defendant's access, or (2) showing

4   that the plaintiff's work has been widely disseminated."  *Id.*

5   A direct link between Plaintiff's works and Defendant's access is shown in

6   the email exchange between Defendant and Ms. Weems in December 2011.  Defendant

7   specifically stated that she intended to use Plaintiff's designs.  *See* Doc. 110 at 11-12;

8   Doc. 110-1 at 12-16 (Weems declaration, Exhibits 1-3).  This link is further shown

9   through the multiple cease and desist letters sent to Defendant between early 2012 and

10  late 2014.  Doc. 110-1 at 17-23, 58-63 (Weems declaration, Exhibits 4-5, 8-9).  Plaintiff

11  alleges that Defendant ignored the letters and continued to manufacture and sell the

12  infringing jewelry.  Doc. 110 at 12.

13  Defendant does not offer any response or opposing explanation of the December

14  2011 emails or the multiple letters notifying her of the alleged infringement.  Nor does

15  she argue that these records are inaccurate in any way.  The Court finds that the emails

16  and letters provide uncontested evidence sufficient to show that Defendant had access to

17  Plaintiff's copyrighted works.

18  **b.      Substantial Similarity.**

19  In determining whether two works are substantially similar, courts in the Ninth

20  Circuit employ a two-part analysis: an objective extrinsic test and a subjective intrinsic

21  test.  *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).  "The 'extrinsic' test considers

22  whether two works share a similarity of ideas and expression based on external, objective

23  criteria."  *Smith*, 84 F.3d at 1218.  In applying the extrinsic test, courts require a lower

24  standard of proof to find substantial similarity when a high degree of access is shown.  *Id.*

25  (citing *Shaw v. Lindheim*, 919 F.2d 1353, 1359 (9th Cir. 1990)).

26  A side-by-side comparison of Plaintiff's copyrighted works and Defendant's

27  allegedly infringing works shows them to be identical in subject matter, shape, color, and

28  arrangement.  *See, e.g.*, Doc. 20-1 at 1-3; Doc. 110 at 6-7.  In fact, Defendant concedes as

1    much.  *See* Doc. 110-2 at 7.  Defendant was shown a side-by-side comparison of charms

2    from Exhibit A of the amended complaint during her deposition and asked if the charms

3    were identical.   Defendant responded: "They appear so."  *Id.*   The Court finds the

4    extrinsic test easily satisfied.

5    "The 'intrinsic test' is a subjective comparison that focuses on 'whether the

6    ordinary, reasonable audience' would find the works substantially similar in the 'total

7    concept and feel of the works.'"  *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th

8    Cir. 2010) (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).

9    This test is also easily satisfied.  Defendant's allegedly infringing works are identical in

10   all respects to Plaintiff's copyrighted jewelry.  *See*, *e.g.*, Doc. 20-1 at 1-3; Doc. 110 at 6-

11   7.  As noted above, Defendant admitted as much in her deposition.  Although the intrinsic

12   test can be difficult to apply in some cases, such as when literary works are at issue, the

13   products in this case, although creative, are not complex.   They are simple items of

14   jewelry with a single purpose.   As the Ninth Circuit has explained:

15
16       A determination that a bee fashioned by a jeweler, or a stuffed
         animal produced by a toymaker, embodies an idea—the form of a natural
17       creature—that cannot be separated from its expression, primarily involves
         the observer's physical senses.  Where idea and expression merge, a court
18       is well-suited to make the required determination of similarity on a motion
         for summary judgment.
19

20   *Shaw*, 919 F.2d at 1360-61.  The Court finds that no reasonable juror could conclude that

21   the products are not substantially similar in the "total concept and feel of the works."

22   *Benay*, 607 F.3d at 624; *Liberty Lobby*, 477 U.S. at 248.

23                    **3.      Copyright infringement summary.**

24       Plaintiff has shown, as a matter of undisputed fact, that it owns valid copyrights in

25   the works and that Plaintiff has copied constituent elements of the works that are original.

26   *Loomis*, 836 F.3d at 994.   The Court accordingly will grant Plaintiff's motion for

27   summary judgment on the issue of copyright infringement.

28   / / /

1

#### 4.      Defendant's liability for post-bankruptcy infringement.

2        Plaintiff moves for summary judgment on the issue of whether Defendant can be

3   held liable for infringement occurring after her discharge from bankruptcy.  Doc. 110 at

4   15.   Plaintiff has submitted uncontested evidence that Defendant's former website,

5   www.westcoastcharms.net, now redirects viewers to a new website, www.snap-it.net, that

6   is owned and maintained by Defendant and continues to sell the infringing works.  *Id.* at

7   8-9; Doc. 110-2 at Exhibit D (declaration of Dennis Meraz and attachments showing

8   images of the infringing works for sale on www.snap-it.net).

9        A bankruptcy discharge applies only to debts and claims that arose before the

10  bankruptcy.  *See* 11 U.S.C. § 727(b) ("[a] discharge under subsection (a) of this section

11  discharges a debtor from all debts that arose before the date of the order for relief under

12  this chapter, and any liability on a claim that is determined . . . *if such claim had arisen*

13  *before the commencement of the case*[.]" (emphasis added)); *Partners for Health and*

14  *Home, L.P. v. Yang*, 488 B.R. 109, 119 (C.D. Cal. 2012) ("A bankruptcy discharge

15  cannot discharge liabilities for acts that the debtor committed or continued post-petition,

16  or at least post-discharge."); *see also O'Loghlin v. Cnt'y of Orange*, 229 F.3d 871, 874-

17  75 (9th Cir. 2000) (holding that a plaintiff could state a claim for the defendant's

18  continuing violation post-bankruptcy, despite the fact that the defendant was granted a

19  discharge from identical violations occurring prior to bankruptcy.).

20        Defendant has continued to sell the infringing works following her discharge from

21  bankruptcy.  Defendant is liable for any infringing conduct committed post-discharge.

22

#### 5.      Statutory damages.

23        Defendant's copyright infringement entitles Plaintiff to statutory damages.  *See*

24  17 U.S.C. § 504(c)(1) ("the copyright owner may elect . . . an award of statutory damages

25  for all infringements involved in the action . . . in a sum of not less than $750. . . . For the

26  purposes of this subsection, all the parts of a compilation or derivative work constitute

27  one work.").  Plaintiff's 42 infringed works are covered by eleven copyrights.  Doc. 111,

28  ¶¶ 1-2.   Plaintiff asks the Court to award $750 for each of the eleven infringed

1   copyrights, totaling $8,250.  Doc. 110 at 16.

2   　　　The issue of damages may be decided on summary judgment when a plaintiff

3   seeks minimum statutory damages.  *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th

4   Cir. 2011) ("there is no right to a jury trial when a judge awards the minimum statutory

5   damages.") (citing *In BMG Music v. Gonzalez*, 430 F.3d 888, 892-893 (7th Cir. 2005)

6   ("[I]f there is no material dispute and a rule of law eliminates discretion in selecting the

7   remedy, then summary judgment is permissible.")).  The Court will award Plaintiff the

8   minimum statutory damages for each of the eleven counts of copyright infringement,

9   totaling $8,250.

10   　　　**B.　　Patent Infringement.**

11   　　　Plaintiff is the owner of U.S. Patent No. D.711.278 ("the '278 patent"), "a design

12   patent for a heart-shaped glass locket."  Doc. 110 at 16.  A defendant infringes a design

13   patent by "appl[ying] the patented design, or any colorable imitation thereof, to any

14   article of manufacture for the purpose of sale, or [by] sell[ing] or expos[ing] for sale any

15   article of manufacture to which such design or colorable imitation has been applied."  35

16   U.S.C. § 289.  Defendant does not dispute Plaintiff's allegations that she currently is

17   manufacturing and selling the allegedly infringing product on her website, www.snap-

18   it.com.  Thus, the Court need only determine if "the patented design, or any colorable

19   imitation thereof" has been applied to the accused "article of manufacture" – or, simply

20   put, whether Defendant's locket actually infringes on Plaintiff's patented design.[3]  *Id.*

21   　　　"In determining whether an accused product infringes a patented design, this court

22   applies the 'ordinary observer' test."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294,

23   1306 (Fed. Cir. 2010) (citations omitted).  Infringement occurs if "an ordinary observer,

24   familiar with the prior art designs, would be deceived into believing that the accused

25   product is the same as the patented design."  *Id.*   Ultimately, what matters is the "overall

26   ornamental visual impression."  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396,

27   

28   　　　[3] A quick search reveals that the infringing product is still in-stock and for sale on Defendant's website.  *See* Snap-It Website, http://www.snap-it.net/catalog/CZ_ROSE_ Sweetheart_Stainless_Steel_Locket_ONLY.html (last visited Jan. 26, 2017).

1405 (Fed. Cir. 1997).  Courts should not try to compare the designs strictly element-by-element.  *Crocs*, 598 F.3d at 1303.  "[I]nfringement can be found even if the accused and patented designs are not identical."  *OddzOn*, 122 F.3d at 1405.

Plaintiff submits the following side-by-side comparison in support of its patent infringement allegations:

| Plaintiff's Patent D711,278 | Defendant's Infringing Heart-Shaped Lockets |
|---|---|
|  Fig. 2 |  |
|  Fig. 1 |  |
|  https://www.origamiowl.com/shop/categories/living-lockets |  http://www.snap-it.net/index.php?cat=174 |

Doc. 110 at 18.

The Court finds that summary judgment in favor of Plaintiff is warranted. Defendant does not deny that she has made and sold the allegedly infringing product. Nor does Defendant assert that the works are not substantially similar.  As shown by the

1    side-by-side comparison, the '278 patent and the Defendant's heart-shaped glass locket

2    are virtually identical.  "If the claimed design and the accused designs were arrayed in

3    matching colors and mixed up randomly, this court is not confident that an ordinary

4    observer could properly restore them to their original order[.]"  *Crocs*, 598 F.3d at 1306.

5          **C.     Permanent Injunction.**

6          Plaintiff seeks a permanent injunction barring Defendant from infringing on

7    Plaintiff's copyrights and design patent in the future.  Doc. 110 at 19.  A plaintiff seeking

8    a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that

9    remedies available at law, such as monetary damages, are inadequate to compensate for

10   that injury; (3) that, considering the balance of hardships between the plaintiff and

11   defendant, a remedy in equity is warranted; and (4) that the public interest would not be

12   disserved by a permanent injunction."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388,

13   391 (2006).  "While '[t]he decision to grant or deny permanent injunctive relief is an act

14   of equitable discretion by the district court,' the 'traditional principles of equity' demand

15   a fair weighing of the factors listed above, taking into account the unique circumstances

16   of each case."  *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880

17   (9th Cir. 2014) (quoting *eBay*, 547 U.S. at 391, 394). .

18          Plaintiff argues that it has suffered an irreparable injury that cannot be adequately

19   compensated by an award of damages because "the harm caused to [Plaintiff's]

20   reputation, goodwill, and brand is difficult, if not impossible, to quantify."  Doc. 110 at

21   20 (citing *Liberty Media Holdings, LLC v. Vingay.com*, No. 11-CV-280-PHX-LOA, 2011

22   WL 7430062 at *14 (D. Ariz. Dec. 28, 2011)).  The Court agrees that irreparable harm

23   has been shown in this case.  Defendant makes and sells products identical to Plaintiff's

24   works, and has done so continuously for years.  And it is clear that Defendant has no

25   regard for Plaintiff's copyright or patent interests or the federal law requiring that they be

26   honored.   She  has  ignored  multiple  warnings,  notices,  and  requests  to  cease  the

27   infringement.  Following the filing of this lawsuit and her bankruptcy discharge, she

28   simply created a new website and resumed selling her infringing products.  It is clear that

1    only an injunction will stop Defendant's infringement and protect Plaintiff's rights.  *See*

2    *Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1136 (D. Ariz. 2013)

3    ("Because Defendants received numerous calls, letters, and cease and desist notices from

4    [Plaintiff] but did not cease infringement, a permanent injunction is warranted to prevent

5    future copyright violations.").  Moreover, given Defendant's recent bankruptcy, it seems

6    unlikely that Plaintiff will recover even the modest monetary damages awarded here.

7    Accordingly, the Court finds that the first two factors – whether Plaintiff has suffered

8    irreparable injury and whether remedies available at law are inadequate – favor injunctive

9    relief.

10    The third factor – the balance of hardships between Plaintiff and Defendant – also

11    favors a permanent injunction.  Entering the injunction and preventing Defendant from

12    engaging in clearly unlawful conduct would impose no legitimate hardship on her, while

13    denying the injunction and allowing Defendant to continue trading on Plaintiff's

14    creations would impose a clear and unreasonable hardship on Plaintiff.  *See Liberty*

15    *Media Holdings*, 2011 WL 7430062 at *14.

16    Lastly, a permanent injunction against Defendant that is reasonably tailored serves

17    the public interest because it is consistent with policies underlying the federal laws

18    against infringement.  The Court finds that a permanent injunction against Defendant is

19    appropriate in this case.

20    **IT IS ORDERED:**

21        1.      Plaintiff's motion for summary judgment (Doc. 110) is **granted**.

22        2.      Plaintiff is awarded $8,250 in damages against Defendant Julie E. Mayo.

23        3.      Defendant Julie E. Mayo and her officers, agents, servants, employees, and

24                  attorneys, as well as all persons who are in active concert with her, are

25                  permanently enjoined from infringing Plaintiff's copyrighted works.

26        4.      Defendant's motion for summary judgment (Doc. 108) is **denied**.

27

28

1   5.   The Clerk is directed to enter judgement consistent with this order and

2   terminate this action.

3   Dated this 30th day of January, 2017.

David G. Campbell
United States District Judge